IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINSTON CHU, M.D. and AESTHETIC & RECONSTRUCTIVE SURGERY, PC<br><br>Plaintiffs<br><br>v.<br><br>DISABILITY REINSURANCE MANAGEMENT SERVICES, INC. a/k/a DISABILITY RMS, ROBERT KELLER, M.D. THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, AMERICAN INTERNATIONAL GROUP, INC. a/k/a AIG, AMA INSURANCE AGENCY, INC. A subsidiary of the American Medical Association, and AMERICAN MEDICAL ASSOCIATION, INC.,<br><br>Defendants | ) | Case No. 06-91E<br><br>Judge Maurice B. Cohill, Jr. |

**OPINION AND ORDER**

Pending before the Court is Defendants Disability Reinsurance Management Services, Inc. ("D&RMS") and Robert Keller ("Dr. Keller")'s motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the claims against them in Plaintiffs' Winston Chu, M.D. ("Dr. Chu") and Aesthetic & Reconstructive Surgery, PC ("A&RS") (collectively "Plaintiffs") Complaint. Specifically, D&RMS and Dr. Keller (collectively "these Defendants") are seeking to dismiss counts V, VI, XI, XII, XVII, XVIII, XXIII, XXIV, XXIX, XXX, XXXIX, XL, XLV, XLVI, LI, LII, LVII, LVIII, LXIII, and LXIV of Plaintiffs' Complaint. For the reasons set forth below, these

Defendants' motion to dismiss is granted as to Counts XVII (17), XVIII (18), XXIV (24), XXIX (29), XXX (30), XXXIX (39), XL (40), XLVI (46), LI (51), and LII (52) of the Complaint and is otherwise denied.

**I. Standard of review.**

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of the claim. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), citing, Conley, 355 U.S. at 45-46; see also Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). "A motion to dismiss pursuant to 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." In Re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1420 (3d Cir.1997). While a court will accept well-pleaded allegations as true for purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

**II. Plaintiffs' Compliance with Fed.R.Civ.P. 8(a).**

These Defendants first argue in support of their motion to dismiss that Plaintiffs' Complaint should be dismissed in its entirety because it fails to comply with Fed.R.Civ.P. 8(a)(2)'s requirement that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." These Defendants' Brief in Support of Motion to Dismiss, p. 2. Given the number of parties and claims involved in this matter, we find that Plaintiffs' Complaint, albeit lengthy, does

not violate the requirements of Fed.R.Civ.P. 8(a). Accordingly, these Defendants' motion to dismiss Plaintiffs' Complaint based upon a failure to comply with the requirements of Fed.R.Civ.P. 8(a) is denied.

**III. Plaintiffs' Defamation, Libel and Slander claims against these Defendants.**

Plaintiffs' Complaint alleges defamation, libel and slander claims by each of the Plaintiffs against each of these Defendants, for a total of six separate counts in the Complaint. At the heart of the Plaintiffs' slander, libel and defamation claims against these Defendants are statements, both written and verbal, allegedly made by Dr. Keller to Dr. Brian Dalton ("Dr. Dalton"), Dr. Chu's treating physician. Specifically, Plaintiffs' Complaint alleges that on November 18, 2004, during a telephone call, Dr. Keller, an employee of DRMS, told Dr. Dalton that Dr. Chu "had prior problems related to alcohol (ethanol) intake, loss of licensure to practice medicine, and a cessation of [Dr. Chu's] medical practice." See Complaint, ¶ 38. Plaintiffs' Complaint further alleges that on November 20, 2004, Dr. Keller generated a Medical File Review Addendum which summarized his conversation with Dr. Dalton, including noting that Dr. Dalton "had not been aware of Dr. Chu's prior medical problems related to alcohol intact [sic], loss of licensure, etc." See Complaint, ¶ 39 and Exhibit B attached to Plaintiffs' Complaint. Plaintiffs' Complaint further alleges that on November 20, 2004, Dr. Keller wrote a follow-up letter to Dr. Dalton wherein he again referenced Dr. Chu's alleged problems with alcohol/ethanol, loss of licensure and cessation of practice. See Complaint, ¶ 40 and Exhibit C attached to Plaintiffs' Complaint. Plaintiffs' Complaint further alleges that by letter dated January 18, 2005, Plaintiff's attorney, S. Walter Foulkrod, was sent a copy of Dr. Keller's November 20, 2004 letter and Dr. Keller's November 20, 2004 Medical File Review Addendum. Finally, Plaintiffs' Complaint alleges that Attorney Faulkrod received copies of the relevant letter and Medical File Review Addendum via facsimile on January 19, 2005.

**A. These Defendants argue that the defamation, libel and slander claims by Plaintiff Aesthetic & Reconstructive Surgery, PC ("A&RS") must be dismissed because the allegedly defamatory statements were not directed towards A&RS.**

These Defendants raise several arguments as to why each and every one of the slander, libel and defamation claims against them should be dismissed. The first argument we will address is the argument that the defamation, libel and slander claims brought against these Defendants by Plaintiff A&RS must be dismissed because Plaintiffs' Complaint does not contain any allegations that Dr. Keller made any defamatory statements about A&RS and a plaintiff cannot base a defamation action on defamatory language directed at a third party. Defendants' Brief in Support of Motion to Dismiss, p. 18, citing, Bargerstock v. Washington Greene Community Action Corp., 397 Pa. Super. 403, 580 A.2d 361 (1990), appl den'd, 529 Pa. 655, 604 A.2d 247 (1992).[1] Further, these Defendants argue, a corporation or other organization is not defamed by words directed at its officers, directors, or shareholders." Id., citing Fennell v. Van Cleef, 2000 Phila. Ct. Com. PL. LEXIS 59 (Sept. 25, 2000), citing, Sack on Defamation, § 2.10.1.

Plaintiffs' position on this issue is that A&RS is a proper plaintiff because Dr. Chu and A&RS "have a sufficient identity to evidence that the libel and slander committed against Dr. Chu personally has also impacted on his corporate alter ego in that any impact on the reputation of Dr. Chu has a like impact on his business entity. As far as his practice of medicine, both Dr. Chu and A&RS are the same entity." Plaintiffs' Opposition Brief, p. 10. Plaintiffs do not cite any legal authority in support of this proposition.

---

[1]Defense counsel is requested in any future briefs filed with this Court to include specific page citations.

A&RS is a corporation. Complaint, ¶ 2. The Pennsylvania Supreme Court has held that "a corporation may be defamed" and that "any language which unequivocally, maliciously and falsely imputes to an individual or corporation want of integrity in the conduct of his or its business is actionable." Cosgrove Studio & Camera Shop, Inc. v. Pane, 408 Pa. 314, 319-320, 182 A.2d 751, 753-54 (1962), citing, inter alia, Restatement Torts § 561. The Restatement (Second) of Torts, § 561, which is virtually identical to the original Restatement Torts § 561 cited to in the Cosgrove decision, addresses the defamation of corporations; it states in relevant part: "[o]ne who publishes defamatory matter concerning a corporation is subject to liability to it-(a) if the corporation is one for profit, and the matter tends to prejudice it in the conduct of its business or to deter others from dealing with it . . . ." Restatement (Second) of Torts § 561(1). Further, the comment section for § 561 explains: "[a] corporation for profit has a business reputation and may therefore be defamed in this respect. Thus a corporation may maintain an action for defamatory words that discredit it and tend to cause loss to it in the conduct of its business, without proof of special harm resulting to it. (See § 569, Comment *e*, and § 573). A corporation is not defamed by communications defamatory of its officers, agents or stockholders unless they also reflect discredit upon the method by which the corporation conducts its business." Id.

Plaintiffs allege in their Complaint that A&RS "is the business entity under which Dr. Chu practiced medicine, generally, and plastic surgery, more specifically. Dr. Chu is the President of [A&RS]." Complaint, ¶ 2. The defamatory statements alleged in the Complaint do not impute to A&RS a "want of integrity in the conduct of . . . its business." Cosgrove, 408 Pa. at 320, 182 A.2d at 754. Accordingly, A&RS has failed to state a defamation, libel or slander claim against these Defendants upon which relief can be granted. These Defendants' motion to dismiss the defamation, slander and libel claims brought by A&RS against them is granted and Counts XXXIX, XL, XLVI,

LI, and LII are dismissed with prejudice.

**B. These Defendants argue that Plaintiff Chu's defamation, libel and slander claims should be dismissed or consolidated because they are duplicative.**

We next turn to these Defendants' arguments with respect to the libel, slander and defamation claims brought against them by Dr. Chu; these claims are found in Counts V, VI, XI, XII, XVII and XVIII of Plaintiffs' Complaint. With respect to these claims, these Defendants argue that said claims against them should be dismissed or consolidated because they are duplicative. Defendants' Supporting Brief, p. 11. Plaintiffs do not address this argument at all in their brief in opposition to the pending motion to dismiss.

"There are two kinds of defamation:" libel and slander. Sobel v. Wingard, 366 Pa. Super. 482, 486, 531 A.2d 520, 522 (1987). The allegations contained in Counts XVII and XVIII of Plaintiffs' Complaint, which contain Dr. Chu's defamation claims against these Defendants, are duplicative of the allegations contained in Counts V, VI, XI and XII of Plaintiffs' Complaint, which contain Dr. Chu's libel and slander claims against these Defendants. Therefore, these Defendants' motion to dismiss is granted as to Counts XVII and XVIII of Plaintiffs' Complaint only.

**C. These Defendants also argue that Plaintiff Chu's libel and slander claims against them should be dismissed because they are barred by the applicable statute of limitations.**

These Defendants also argue that Dr. Chu's libel and slander claims against them should be dismissed because they are barred by the applicable one-year statute of limitations. Defendants' Supporting Brief, pp. 6-7. In response, Plaintiffs argue that the discovery rule applies in this case and upon applying said rule, the limitations period had not run at the time they commenced their lawsuit against these Defendants. Plaintiffs' Opposition Brief, pp. 4-6.

"Federal courts sitting in diversity apply the substantive law of the states in which they sit." Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Statutes of limitations are considered

substantive. Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 552 (3d Cir. 1985), citing, Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99 (1945); Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160 (3d Cir. 1976). Since this Court sits in Pennsylvania, Plaintiffs' libel and slander claims against these Defendants are governed by Pennsylvania law. Under Pennsylvania law, claims for libel and slander must be commenced within one year. 42 Pa.C.S.A. § 5523(1). This limitation period, however, can be tolled under the discovery rule. Fine v. Checcio, 582 Pa. 253, 870 A.2d 850 (2005).

The discovery rule was recently discussed and analyzed by the Pennsylvania Supreme Court in Fine v. Checcio, 582 Pa. 253, 870 A.2d 850 (2005). In Fine, the Pennsylvania Supreme Court held that "the discovery rule applies to toll the statute of limitations whether or not the prescribed period had expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises. Id. at 859. Significant for purposes of the pending motion, the Fine Court also explained that:

> when a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

Id. at 858-859 (internal citations omitted).

Applying the above law to the facts alleged in Plaintiffs' Complaint, we find that a jury could conclude that Plaintiffs neither knew nor reasonably should have known that Dr. Keller had injured them until at least January 18, 2005, the date when Dr. Chu's attorney was mailed copies of Dr.

Keller's November 20, 2004 letter to Dr. Dalton and the Medical Review File Addendum also authored by Dr. Keller and dated November 20, 2004. In other words, this is not a situation where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." Id. at 859.

This lawsuit was commenced on January 17, 2006, when Plaintiffs filed a Praecipe for Writ of Summons in the Court of Common Pleas for Erie County. Applying the discovery rule to Dr. Chu's slander and libel claims, the limitations period on these claims did not begin to run until at least January 18, 2005. Therefore, Plaintiffs' slander and libel claims against Defendants are not barred by the applicable one-year statute of limitations. See Patterson v. American Bosch Corp., 914 F.2d 384, 387 (3d Cir. 1990) (providing that the filing of a Praecipe for a Writ of Summons commences an action). These Defendants' motion to dismiss Plaintiffs' libel and slander claims because they are barred by the applicable statute of limitations is denied.

**D. These Defendants also argue that Dr. Chu's libel and slander claims against them should be dismissed because a conditional privilege applies to the allegedly defamatory communications.**

These Defendants also argue in support of their motion to dismiss Dr. Chu's libel and slander claims against them that a conditional privilege applies to the allegedly defamatory communications because the statements "were made in the course of an investigation of a claim for insurance benefits and implicate significant interests of [these Defendants], Dr. Dalton and the public as a whole, including the interest of ensuring that only valid claims under the terms of the policy are paid and non-meritorious claims are rejected." Motion to Dismiss, ¶ 18.

Under Pennsylvania law,

> [i]n an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
>
> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343(a). All of the burden, however, is not on the plaintiff:

> [i]n an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
>
> (1) The truth of the defamatory communication.
> (2) The privileged character of the occasion on which it was published.
> (3) The character of the subject matter of defamatory comment is of public concern.

Id. at § 8343(b).

Applying this law to the facts as alleged in the Plaintiffs' Complaint, it is not possible to decide the issues of conditional privilege and abuse of conditional privilege at this point in the proceedings. Such arguments are better examined after all of the relevant facts have been flushed out by discovery. Accordingly, the motion to dismiss Plaintiffs' libel and slander claims on the basis of conditional privilege is denied.

**IV. Plaintiff Dr Chu's "Bad Faith - Breach of Contract - Declination of Benefits" claims against these Defendants.**

Dr. Chu has also brought "bad faith-breach of contract-declination of benefits" claims against these Defendants. See Complaint, ¶¶ XXIII and XXIV. These Defendants first argue that these claims against them must be dismissed because in Pennsylvania, bad faith claims are governed by

42 Pa.C.S.A. § 8371 which only applies to "insurers" and neither of these Defendants are "insurers." Second, these Defendants argue that to the extent Counts XXIII and XXIV seeks damages for breach of contract, they also must be dismissed because Dr. Chu has not alleged in the Complaint that he had a contract with either of these Defendants. Plaintiffs' response to this part of the motion to dismiss only discusses that Counts XXIII and XXIV are bad faith claims brought pursuant to 42 Pa.C.S.A. § 8371.

Our focus is on whether these Defendants are "insurers" as that term in meant in 42 Pa.C.S.A. § 8371 which provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

Relevant to the issue of whether either of these Defendants qualify as an "insurer" under § 8371, Plaintiffs allege the following in their Complaint:

> 3. Defendant, Disability Reinsurance Management Services, Inc. a/k/a Disability RMS, (hereinafter referred to an "Disability RMS"), is a business entity organized and existing pursuant to the laws of the State of Maine with headquarters located at One Riverfront Plaza, Westbrook, Maine 04092-9700. At all times material to this action, Disability RMS was and is the Claims Administrator for the Defendant, The United States Life Insurance Company in the City of New York, which is the disability insurance carrier for the Defendant, American Medical Association.
>
> 4. At all times material to this action, the defendant, Disability RMS, was acting individually and/or by and through its agents, ostensible agents, servants and/or employees who were then and there engaged in the performance of their duties, within the scope of their authority and upon the business of the Defendant Disability RMS. Also, at all times material to this action, Defendant, Disability RMS, was

acting individually and as an agent and/or ostensible agent and/or servant and/or employee and/or as Claims Administrator of the Defendant, the Untied States Life Insurance Company in the City of New York.

5. Defendant, Robert Keller, M.D. (Hereinafter referred to as "Keller"), is a medical doctor . . . . Defendant Keller held himself out to Plaintiffs and to the general public to be specialized in the treatment of Spinal conditions and in the field of Rehabilitation and in reviewing disability claims and he provided professional services in return for monetary compensation. At all times material to this action, Defendant Keller was acting individually and/or as an agent and/or ostensible agent and/or servant, and/or employee of the Defendant, Disability RMS and the Defendant, the United States Life Insurance Company in the City of New York, who was then engaged in the performance of his duties, within the scope of his authority, and upon the business of the Defendant, Disability RMS and the United States Life Insurance Company in the City of New York.

6. Defendant, The United States Life Insurance Company in the City of New York (hereinafter referred to as "United States Life"), is a business entity . . . .

7. At all times material to this action, the Defendant, United States Life, was acting individually and/or as an agent and/or ostensible agent and/or servant and/or employee and/or subsidiary of the Defendant, AIG. Further, United States Life is the disability insurance carrier for the Defendant, American Medical Association. Also, at all times material to this action, the Defendant United States Life, was acting by and through its agents and/or ostensible agents and/or servants and/ro employees who were then and there engaged in the performance of their duties, within the scope of their authority, and upon the business of the Defendant, United States Life. Further, the Defendant, United States Life, contractually provides coverage for two (2) disability insurance policies for Dr. Chu in exchange for cash insurance premium payments.

. . .

14. Disability RMS is the Claims Administrator for the Defendant, United States Life, which is the disability insurance carrier for the Defendant, American Medical Association, of which the Plaintiff, Dr. Chu, is a member.

15. Dr Chu, who is a member of the American Medical Association, was able to purchase a disability income insurance policy and an office overhead expense disability insurance policy with United States Life in exchange for cash insurance premium payments. Since Dr. Chu, who continually paid disability insurance premiums throughout the duration of the policy, became disabled, the Defendant, United States Life, is contractually obligated tp pay monthly disability income benefits and/or monthly office overhead expense benefits to Dr. Chu.

. . .

17. On or about April 18, 1985, Dr. Chu purchased an AMA-sponsored disability insurance policy through the American Medical Association called a **Disability Income Plan** through the Defendant, AMA Insurance Agency. The Defendant, AMA Insurance Agency, processed the application and wrote the disability insurance policy on behalf of the Defendant, United States Life.

. . .

20. On or about February 6, 1984, Dr. Chu purchased an AMA-sponsored disability insurance policy called an **Office Overhead Expense Plan** through the Defendant, AMA Insurance Agency. The Defendant, AMA Insurance Agency, processed the application and wrote the disability insurance policy on behalf of the Defendant, United States Life.

. . .

24. The Defendant, United States Life, is the disability insurance carrier (for the American Medical Association) which received Dr. Chu's insurance premium payments and contractually agreed to provide disability insurance coverage, both income loss benefits and office overhead expense benefits, to Dr. Chu in the event Dr. Chu became disabled.

25. The Defendant, Disability RMS, is the Claims Administrator for United States Life.

. . .

32. Despite both of these diagnoses occurring in the spring of 2004, **both** Disability Income Benefits and Office Overhead Expense Benefits were initially *not approved* and/or *denied* by the Defendant, Disability RMS, the Claims Administrator for the Defendant, United States Life, disability insurance carrier for the Defendant, American Medical Association.

. . .

46. . . . The Defendants, United States Life, AIG, and Disability RMS, continue to deny coverage under Dr. Chu's Office Overhead Expense Plan and are in breach of contract with Dr. Chu.

Complaint, ¶¶ 3-7, 14-15, 17, 20, 24-25, 32 and 46.

The Pennsylvania Supreme Court has not yet decided the issue of who qualifies as an "insurer" under 42 Pa.C.S.A.§ 8371. As a federal court interpreting Pennsylvania state law in this diversity action, we must consider and accept the decisions of the state's highest court as the ultimate authority on this issue. When, however, as in this case, the Pennsylvania Supreme Court has not authoritatively considered the issue at hand, 'our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem.' In this effort, we must give 'proper regard' to the relevant rulings of other courts within the state." T&N PLC v. Pennsylvania Insur. Guar. Ass'n, 800 F.Supp. 1259, 1262 (E.D. Pa. 1992) (internal citations omitted) (interpreting meaning of term "insurer"in 42 Pa.C.S.A. § 8371).

Both of the Pennsylvania appellate courts have examined the issue of who is an "insurer" under 42 Pa.C.S.A.§ 8371. The most recent Pennsylvania appellate court decision on this issue is Brown v. Progressive Insurance Company and Mountain Laurel Assurance Co., 860 A.2d 493 (Pa. Super. 2004), app'l den'd, 582 Pa. 714, 872 A.2d 1197 (2005). In Brown, the state appellate court explained:

> [a]s Appellants correctly point out, an action for bad faith under 42 Pa.C.S.A . § 8371 can only be brought against an "insurer." The Judicial Code does not define "insurer." SEPTA v. Holmes, 835 A.2d 851, 856 (Pa.Commw. 2003), appeal denied, 577 Pa. 738, 848 A.2d 930 (2004). The Insurance Department Act of 1921, as amended, 40 P.S. §221.3 defines "insurer" as "any person who is doing, had done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization, or conservation by any insurance commissioner." Id. at 856-57.[2]

[2]Footnote 6 from the Brown case appears as part of the above quotation. Footnote 6 states: "[u]sing this definition, the Commonwealth Court has held that self-insured entities are not 'insurers'." Holmes, 835 A.2d at 854. Similarly, a Pennsylvania federal court [Lockhart v. Federal Ins. Co., 1998 WL 151019 (E.D. Pa. March 30, 1998)] has held that a bad faith claim will not lie against an insurer-affiliated entity which does not act as a de facto 'insurer,' but instead merely performs administrative tasks." Brown, 860 A.2d at 498, n. 6.

Id. at 498. Based upon this definition, the Brown court stated that "it is undisputed that both Progressive and Mountain Laurel are 'insurers'." Id. The Brown court then explained: "[u]nfortunately, that does not answer the more relevant question, which is: how should courts decide which of two related insurance companies is the 'insurer' for purposes of the bad faith statute?":

> [t]here is no simple rule for determining who is the insurer for purposes of the bad faith statute. The question is necessarily one of fact, to be determined both by examining the policy documents themselves, and by considering the actions of the company involved. Thus, we look at two factors: (1) the extent to which the company was identified as the insurer of the policy documents; and (2) the extent to which the company acted as an insurer. See, Lockhart v. Fed. Ins. Co., 1998 WL 151019, 1998 U.S. Dist. LEXIS 4046 (E.D. Pa. March 30, 1998). This second factor is significantly more important than the first factor, because it focuses on the true actions of the parties rather than the vagaries of corporate structure and ownership.

Id. at 498-499 (internal citations and footnotes omitted).

In examining "the extent to which [the defendant insurance company] acted as [the plaintiff's] insurer, particularly with respect to the types of activity that may give rise to a bad faith claim," the court explained: "[t]he duty of an insurer is to act in good faith 'arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement'." Id. at 499-500, citing, Lockhart v. Federal Ins. Co., 1998 WL 151019 (E.D. Pa. March 30, 1998), and quoting, Romano v. Nationwide Mut. Fire Ins. Co., 435 Pa.Super. 545, 646 A.2d 1128, 1231(1994). In Lockhart, *supra.*, the plaintiff had argued that the defendant Chubb was an "insurer" for purposes of § 8371; her theory of liability was that Chubb, although not named in the insurance policy at issue, was an agent of Federal Insurance Co., the insurance company who had entered into the policy with the plaintiff. Id. at *4. The evidence of record showed that Chubb provided loss adjustment services for Federal. Id. at *3.

The Lockhart court concluded that Chubb was not an "insurer" under the facts of the case:

> "in short, once [sic] cannot reasonably find from the evidence of record that Chubb was a party to the insurance contract at issue, conducted the investigation of plaintiff's claim, or made the decision to deny coverage to her. In the absence of such evidence, plaintiff cannot sustain a claim against Chubb for . . . bad faith conduct "toward the insured" by "the insurer." See 42 Pa.C.S.A. § 8371. A defendant who is not legally obligated to pay a claim and who does not make the decision to deny a claim cannot be liable for knowingly or recklessly denying a claim under a policy without a reasonable basis. *See Klinger v. State Farm Mutual Auto Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994); app. denied, 540 Pa. 641, 659 A.2d 560 (1995).

Id. at *4.

Interestingly, both the Brown and the Lockhart decisions address the possibility that there may arise an instance where an insurer who is not a party to the insurance contract at issue, but nonetheless has allegedly engaged in conduct toward the insured as a result of said insurance contract that gives rise to their being a duty of good faith. See Brown, 860 A.2d 493 at 500 n. 8 ("[i]n *Lockhart*, the court acknowledged the possibility that an insurer who is not listed as a party to the contract itself nevertheless may be held liable under theories such as agency , alter ego, or 'de facto insurer.' Like the *Lockhart* court, we acknowledge this possibility as well. Because these issues are not present in the instant case, we need not address them") (citation omitted). See Lockhart, 1998 WL 151019 at *4 ("A defendant who is not legally obligated to pay a claim and who does not make the decision to deny a claim cannot be liable for knowingly or recklessly denying a claim under a policy without a reasonable basis.").

As indicated in the Brown decision, the Pennsylvania Commonwealth Court also has examined the issue of who is an "insurer" under 42 U.S.C. § 8371. In Southeastern Pennsylvania Transp. Authority v. Holmes, 835 A.2d 851 (Pa. Commw. Nov. 13, 2003), appl den'd, 577 Pa. 738, 848 A.2d 930 (2004), the court analyzed the issue of follows:

> The Judicial Code does not define "insurance policy," "insurer," or "insured." Accordingly, it is appropriate to look to the definitions provided in other sources and in related statutes for guidance on their [the terms "insurance policy," "insurer" and "insured") meaning. We do so here.
>
> The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §221.3, defines "insurer"[3] as follows: *"[A]ny person who is doing, had done, purports to do, or is licensed to do an insurance business,* and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization, or conservation by any insurance commissioner."
>
> Section 503 of the Insurance Department Act of 1921 (emphasis added).[4] A "policy of insurance" is *"[a]n instrument in writing*, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss. Black's Law Dictionary 1157 (6th ed.1990).

Id. at 856-57 (footnote 19 omitted). Ultimately, because the defendant SEPTA was not licensed as an insurer, did not do, nor purport to do, the business of insurance in the Commonwealth of Pennsylvania, and did not issue policies, collect premiums or agree to accept the liability of others in exchange for consideration, the Holmes court found SEPTA to not be an "insurer" under § 8371. Id. at 857.

Pennsylvania federal courts have also examined the issue of who is an "insurer" under § 8371. A number of these decisions were summarized by the court in the Powell v. Crawford & Co., 2003 WL 22657187 (E.D. Pa. Oct. 30, 2003) decision. In Powell, the court held that a defendant who was the authorized claims administrator of an insurance company from whom plaintiff's deceased

---

[3]Footnote 17 from the Holmes case appears as part of the above quotation. Footnote 17 states: "'Motor vehicle insurer' or 'insurer' is also defined under 75 Pa.C.S. § 1801 as '[a]n entity licensed to write motor vehicle insurance in the Commonwealth." Holmes, 835 A.2d at 856.

[4]Footnote 18 from the Holmes case appears as part of the above quotation. Footnote 18 states: *"See also 'Insurer.* The underwriter or insurance company with whom a contract is made. The one who assumes risk or underwrites a policy, or the underwriter or company with whom contract of insurance is made'. Black's Law Dictionary 808 (6th ed. 1990)." Id.

husband had purchased a motor vehicle insurance policy was not an "insurer." Id. at *3. "We agree that a narrow interpretation of the term 'insurer' is the most probable prediction of how the Pennsylvania Supreme Court would construe the statute. Like the Pennsylvania Insurance Guarantee Association in T&N PLC and the building contractor in Cipriani, [the defendant] issued no policies, collected no premiums, made no profits and assumed no contractual obligations to insureds. Its role was as an adjuster; as was held in Peer and Dresdner the statute simply does not reach its conduct" Id. In so holding, the Powell court discussed the following prior federal court decisions which addressed the issue of the meaning of "insurer" under § 8371: (1) T&N PLC v. Pennsylvania Insur. Guar. Ass'n, 800 F.Supp. 1259 (E.D. Pa. 1992); (2) Peer v. Minnesota Mut. Fire & Cas. Co., 1993 WL 533283 (E.D. Pa. Dec. 23, 1993); (3) Cipriani v. Fed. Ins. Co. Div. of Chubb Group of Ins., 1999 WL 554601 (E.D. Pa. July 20, 1999); and (4) Dresdner v. State Farm Mut. Auto. Ins. Co., 1995 WL 468427 (E.D. Pa. Aug. 8, 1995). Concerning the T&N PLC decision, the Powell court explained that the judge in T&N PLC examined other Pennsylvania statutes, rules of statutory construction and other Pennsylvania cases for guidance and ultimately found that "an insurer issues policies, collects premiums, and in exchange assumes certain risks and contractual obligations." Id. at *2. Concerning the Peer decision, the Powell court explained that the judge "held a plaintiff could not defeat diversity jurisdiction by naming the instate insurance adjustor as a defendant because there is no statutory cause of action under § 8371 against adjusters." Id. Concerning the Cipriani decision, the Powell court explained that in Cipriani, the judge dismissed the § 8371 claim as to a general building contractor who had been hired to investigate the plaintiff's insurance claim on the basis that he was not an "insurer" and in doing so "recognized that other cases in this district have defined 'insurer' narrowly and construed it to mean literal insurers." Id. Finally, concerning the Dresdner decision, the Powell court explained that in Dresdner, the court held "'[b]y its terms, 42 Pa.C.S.A.§ 8371 applies only to

the conduct of an 'insurer' toward an insured . . . . Bad faith claims against insurance agents, claims representatives, peer review organizations and peer review physicians have been found to be inappropriate under § 8371'." Id., quoting, Dresdner, 1995 WL 468427 at *1.

Turning to the question of how the Pennsylvania Supreme Court would interpret the term "insurer" in 42 Pa.C.S.A.§ 8371, we conclude that were the Pennsylvania Supreme Court faced with the issue before this Court, the Supreme Court would first look, as did the state appellate courts in Brown and SEPTA, to the definition contained in the Insurance Department Act of 1921, as amended, 40 P.S. §221.3, which defines "insurer" as "any person who is doing, had done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization, or conservation by any insurance commissioner." See Brown, 835 A.2d at 498; SEPTA, 835 A.2d at 856. The Court would , however, not stop there. It would also consider, as did the Brown court: "(1) the extent to which the company was identified as the insurer of the policy documents; and (2) the extent to which the company acted as an insurer." See Brown, 835 A.2d at 498-499.

Applying this analysis to the allegations contained in Plaintiffs' Complaint, the Court finds that it would be premature at this juncture, prior to discovery being conducted, to dismiss Dr. Chu's § 8371 claim against Defendant D&RMS since Plaintiffs allege in their Complaint that D&RMS was one of the defendants who initially did not approve and/or denied Dr. Chu's claims for benefits. See Complaint, ¶¶ 32 and 46. Accordingly, these Defendants' motion to dismiss Dr. Chu's 42 Pa.C.S.A. §8371 bad faith claim against D&RMS, Count XXIII, is denied.

It is not premature, however, to dismiss the § 8371 claim against Dr. Keller, whom Plaintiffs do not allege was a decision-maker with respect to Dr. Chu's insurance claims. These Defendants' motion to dismiss Dr. Chu's 42 Pa.C.S.A. §8371 bad faith claim against Dr. Keller for failure to state

a claim upon which relief can be granted is granted and Count XXIV of the Complaint is dismissed.

**V. Plaintiffs' Punitive Damages Claims against these Defendants.**

These Defendants' final argument is that Counts XXIX and XXX of Plaintiffs' Complaint must be dismissed because there is no independent cause of action for punitive damages. Defendants' Supporting Brief, pp. 17, 21. "Here, Chu has improperly pleaded a demand for punitive damages as a distinct cause of action. Pennsylvania law is clear that punitive damages are a remedy, not an independent cause of action." Id. at 17.

Plaintiffs' response is that "[t]he punitive damages claims do not constitute separate and distinct causes of action and instead constitute a request for relief contingent upon the satisfaction of the factual and legal standards for such remedy." Plaintiffs' Opposition Brief, 9.

While Plaintiffs acknowledge, as they must, that their punitive damages claims cannot constitute separate and distinct causes of action, the reality is that their punitive damages requests are pled as separate and distinct causes of action against these Defendants. As such, Counts XXIX and XXX of Plaintiffs' Complaint must be dismissed for failure to state a claim upon which relief can be granted. See Nix v. Temple University of the Commonwealth System of Higher Education, 408 Pa. Super. 369, 380, 596 A.2d 1132, 1138 (1991) (holding that "a request for punitive damages does not constitute a cause of action in an of itself. Rather, a request for punitive damages is merely incidental to a cause of action."). These Defendants' motion to dismiss Counts XXIX and XXX of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted is granted and Counts XXIX and XXX are dismissed.

**VI. Conclusion.**

These Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows:

**ORDER**

AND NOW, this 29th day of August, 2006, it is HEREBY ORDERED, ADJUDGED, and DECREED that the Motion to Dismiss filed by Defendants Disability Reinsurance Management Services, Inc., and Dr. Robert Keller (Doc. #6) is GRANTED as to Counts XVII (17), XVIII (18), XXIV (24), XXIX (29), XXX (30), XXXIX (39), XL (40), XLVI (46), LI (51), and LII (52) and is OTHERWISE DENIED.

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior District Court Judge